UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STACEY DUCKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:12-cv-01596-SEB-DML |
| | ) |
| DEVANG AMIN, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## Order on Motion for Protective Order

This matter is before the court on a motion for a protective order by plaintiff Stacey Ducker to prevent the discovery of communications between (a) her and Andre Worthy and (b) her lawyers and Mr. Worthy's lawyers based on a common interest privilege.  For the reasons addressed below, the court determines that under the circumstances presented, a common interest privilege does not protect from disclosure communications that were made without the participation of legal counsel.  Ms. Ducker's motion is GRANTED IN PART AND DENIED IN PART.

## Factual Background

The following background is gleaned from Ms. Ducker's complaint and other filings by the parties.  The court emphasizes that the events surrounding the sharing of the PACE report between Ms. Ducker, Mr. Worthy, and Mr. Amin are disputed; the court's descriptions of these events are not findings by the court but are provided to give context to the present discovery dispute. The court further

notes that the recitation that follows (until the discussion of the investigation by BWI outside counsel) is generally Ms. Ducker's version of the events.

In this case, plaintiff Stacey Ducker has sued defendant Devang Amin for defamation and invasion of privacy arising out of events surrounding the March 2012 dissemination of an internal management report used by Best Western International, Inc. (owner of the hotel chain) called the PACE Report. Mr. Amin was, during the relevant time, the Chairman of the Board of BWI. Ms. Ducker is a former BWI employee but was not employed by BWI at the relevant time. She did, however, have a contractual relationship with BWI through her company, Sapphire Sales Solutions, LLC, which provided training and consulting services to new Best Western hotels.

In March 2012, Ms. Ducker contacted Mr. Amin because she believed that BWI was not using her training and consulting services for new hotel members as much as it was contractually obligated to do and was not promptly paying Sapphire for services Sapphire had provided. The two met to discuss Ms. Ducker's complaints and Mr. Amin said he would speak to BWI's CEO (David Kong) about Sapphire's contract in exchange for a favor from Ms. Ducker. Mr. Amin voiced his suspicion that a BWI employee was falsifying information contained on business reports known as PACE reports, which compile information about requests for proposals that BWI receives from third parties who wish to do business with BWI member hotels. BWI treats these reports as confidential. Mr. Amin asked Ms. Ducker to get a copy of a recent PACE report and told her to ask Andre Worthy, a

BWI employee, for the report. Mr. Worthy worked in BWI's Client Solutions and Services Department and had access to the PACE report. Mr. Amin explained to Ms. Ducker that he did not want to ask for the report because he suspected that a "watered down version of the truth" would be provided in response to his request.

Ms. Ducker telephoned Mr. Worthy, her former colleague, and he agreed to send her the report, which he did by email on March 25, 2012. Ms. Ducker forwarded the email to her daughter, a Sapphire employee, and asked her to print the report and hand deliver it to Mr. Amin, which she did. Two days later, Mr. Amin asked Mr. Worthy to meet with him. When they met, Mr. Amin was accompanied by two members of BWI's board of directors, who asked Mr. Worthy to review the PACE report and interpret it for them. Mr. Worthy believed that the PACE report contained false information and was the product of fraudulent activity by one or more BWI employees. He expressed his concerns about the apparent secretiveness of the meeting and about whether his job was in jeopardy. When he was assured that his employment would be protected, he answered Mr. Amin's questions about the report. This conversation convinced Mr. Amin that some sort of fraud was being perpetrated and Mr. Amin said he intended to conduct an investigation. Mr. Amin told Mr. Worthy to keep their meeting secret.

About six weeks later, BWI's in-house counsel began interviewing various employees about the PACE report, including Mr. Worthy, who was interviewed in late May 2012. Mr. Worthy denied that he had had a meeting with Mr. Amin. Several days later, on June 5, 2012, Mr. Amin, Mr. Worthy, and Ms. Ducker

discussed the in-house investigation. That conversation led Ms. Ducker and Mr. Worthy to believe that Mr. Amin did not intend to tell the truth about how he had learned of fraud regarding the PACE report and how he had obtained a copy of it.

On June 8, 2012, Mr. Worthy retained counsel to advise him with respect to BWI's investigation surrounding the dissemination of the PACE report, based on his concerns that his employment might be in jeopardy and that he might be unfairly targeted for having uncovered fraud in the PACE report.

Ms. Ducker was already represented by counsel during this same time frame, whom she had consulted to evaluate claims by Sapphire against BWI related to their contractual relationship.

In early July 2012, Ms. Ducker's and Mr. Worthy's respective legal counsel entered into a "Shared Work Product Agreement" because their clients were being investigated by BWI regarding the PACE report and its alleged improper disclosure, particularly to Ms. Ducker as an outsider. This Agreement has not been provided to the court, but the court accepts that Ms. Ducker's and Mr. Worthy's respective counsel entered into an agreement documenting the belief that Ms. Ducker and Mr. Worthy shared a common interest in proving Mr. Amin's true role in connection with the sharing and dissemination of the PACE report and to defend against allegations of their own wrongdoing.

On July 17, 2012, Mr. Worthy sent a letter to BWI's CEO, David Kong, outlining his beliefs about the fraudulent nature of the PACE report, his March 2012 meeting with Mr. Amin, the circumstances that led to that meeting (including

his communications with a "former colleague" later identified as Ms. Ducker), and the reasons he had lied to BWI's in-house counsel in May when he denied having met with Mr. Amin. Mr. Worthy expressed his concerns that he was being made a scapegoat for having uncovered fraud and that his job was unfairly jeopardized. On July 25, 2012, in conjunction with BWI's internal investigation and at BWI's insistence, Mr. Worthy provided testimony under oath regarding the PACE report. Two days later, on July 27, 2012, Ms. Ducker's counsel wrote to BWI's in-house counsel and outlined the involvement of Ms. Ducker and her daughter in disseminating the PACE report.

Shortly thereafter, BWI hired outside counsel to investigate the disclosure of the PACE report, Mr. Worthy's assertions of fraud in the report, and Mr. Amin's and Ms. Ducker's involvement in the release of the report. Mr. Worthy and Mr. Amin (both employed by BWI) gave testimony under oath as part of that investigation, but Ms. Ducker declined to do so. Based on that investigation, outside counsel for BWI concluded in October 2012 that Mr. Amin had not requested Ms. Ducker to obtain the report for him. Outside counsel concluded that Mr. Worthy and Ms. Ducker had independently discussed the PACE report, and that Mr. Worthy had given the PACE report to Ms. Ducker so that she could tell Mr. Amin their suspicion that fraudulent activity was afoot. (Mr. Amin had told outside counsel that Ms. Ducker and Mr. Worthy had approached *him* regarding the PACE report.)

Thereafter, BWI and Mr. Amin made accusations regarding Mr. Worthy's, Ms. Ducker's, and Mr. Amin's involvement, raising questions about whether any or all of them had lied, participated in any cover-up, or might face legal ramifications for improperly sharing BWI's trade secrets.

In the meantime, Ms. Ducker's company had filed suit against BWI in the United States District Court for Arizona, charging it with breaching Sapphire's contractual rights to provide training services to BWI member hotels. BWI filed counterclaims. Although neither Sapphire's complaint nor BWI's counterclaims concerned matters surrounding the PACE report, BWI sought in that case discovery of communications between and among Ms. Ducker, Mr. Worthy, and their counsel. On motion by Ms. Ducker (joined by Mr. Worthy as an intervenor for the limited purpose of claiming the communications were privileged), the Arizona District Court ruled on June 27, 2013, that because Ms. Ducker and Mr. Worthy were both being investigated by BWI in connection with their handling of the confidential PACE report and because BWI had threatened litigation at least against Ms. Ducker with respect to her role, the two shared a common interest such that their communications were privileged and not discoverable by BWI. (*See* Dkt. 46-5). The court also noted that the BWI/Sapphire litigation pending before it "ha[d] nothing to do with the confidential information shared by Worthy with Ducker." (*Id.* at p. 4).

Ms. Ducker, her company, and BWI eventually settled their disputes, including any claims stemming from Ms. Ducker's role in obtaining and sharing the

PACE report. Mr. Worthy and BWI also, at some point, resolved any potential litigation over Mr. Worthy's role.[1]

## The Present Discovery Dispute

Ms. Ducker contends that because she and Mr. Worthy shared a "common interest," all communications since June 8, 2012 (the date Mr. Worthy retained counsel and his lawyer and Ms. Ducker's lawyer apparently first communicated) are protected from disclosure under a common interest privilege. She maintains that the common interest privilege protects not only communications between her counsel and Mr. Worthy's counsel, but also communications between her and Mr. Worthy. She seeks a protective order forbidding Mr. Amin from discovering the contents of all of these communications, whether in a deposition setting or through the production of documents.

Mr. Amin contends that the privilege cannot apply in this case because Ms. Ducker and Mr. Worthy do not share any common interests related to this litigation and that even if the two ever shared a common interest, the privilege does not protect communications not involving their counsel.

## Analysis

A.  **Effect of the District of Arizona's Order**

Ms. Ducker requests that the court take judicial notice of the District of Arizona's order regarding the common interest privilege, but she does not contend that it binds this court. The court has reviewed the order but must analyze the

---

[1] The court describes these settlements generally because the parties have not provided specific information about them.

issues presented independently and under the applicable facts and legal authority. Moreover, BWI, though it opposed assertion of the privilege in the District of Arizona, did not have the same incentives as Mr. Amin does in this case to present a vigorous challenge to the privilege claim. As noted by the District of Arizona, Ms. Ducker's and Mr. Worthy's actions surrounding the PACE report were not even relevant to the claims and defenses in that litigation.

**B.     The Common Interest Privilege and Its Application Here**

As both parties agree, the common interest privilege is a variant of the attorney-client privilege. The attorney-client privilege protects from disclosure communications between client and attorney that are made and maintained in confidence *and* for the purpose of the client obtaining legal advice on a matter within the scope of the lawyer's legal representation. *United States v. BDO Seidman LLP,* 492 F.3d 806, 815 (7th Cir. 2007). The common interest variant is an exception to the principle that a client and his attorney cannot share their otherwise privileged communications with a third party without destroying the privilege. *Id.* It can apply only to communications involving an appropriate "common interest" and only where protecting the communications from disclosure is necessary to achieve the social good that the attorney-client privilege is designed to foster. *Id.* at 815-16.

As to the requirement that the communicating parties share a common interest, the court is persuaded that Ms. Ducker and Mr. Worthy did share a common interest as of June 8, 2012. Their common interest lay in discrediting—in

the context of potential legal action against them by BWI—Mr. Amin's version of the circumstances under which Mr. Amin obtained the PACE report and learned from Mr. Worthy or Ms. Ducker information about the alleged false or fraudulent contents of the PACE report. Their common interest ended though, at least as early as (a) Ms. Ducker's settlement agreement with BWI, which terminated the possibility of potential legal action against her or (b) Mr. Worthy's agreement with BWI, which ended the possibility of any adverse action against him based on the PACE report. From that point forward—though the court does not know when that point occurred—one of them no longer faced potential liability or other adverse consequences from BWI, and their common interest dissipated. No longer did they have a reason to engage in new communications for the purposes of protecting common legal interests and obtaining legal advice in pursuit of their common interest. That does not mean, however, that communications that occurred during the time their common interest existed and otherwise met the requirements of the privilege later lost their privileged status. The court is not persuaded by Mr. Amin's argument, for which he provides no authority, that a communication once protected from disclosure by the common interest privilege automatically loses its protected status the moment the parties no longer share a common interest.

    Mr. Amin concedes that if the court finds that the privilege does not evaporate with respect to communications that took place before the termination of the common interest, and which otherwise would meet the requirements of the privilege, then communications between Ms. Ducker's and Mr. Worthy's lawyers

that concerned their clients' common interests may be withheld from production.[2] He contends that the privilege cannot ever shield from disclosure, however, communications solely between Ms. Ducker and Mr. Worthy. So the question in this case is whether the common interest privilege can protect communications between Ms. Ducker and Mr. Worthy that did not involve the participation of either of their lawyers.

The attorney-client privilege fosters and encourages full disclosure and open communications between clients and lawyers to "promote broader public interests in the observance of law and the administration of justice." *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981). Because the privilege allows relevant information to be withheld "in derogation of the search for truth," it is strictly confined. *United States v. BDO Seidman, LLP,* 492 F.3d 806, 815 (7th Cir. 2007). This court agrees with Mr. Amin and finds that protecting from disclosure communications between Ms. Ducker and Mr. Worthy is not necessary to further or achieve the interests the attorney-client privilege is designed to foster. Allowing Ms. Ducker and Mr. Worthy to communicate in secret, including about critical facts at issue in this case, is too broad a constraint on the "search for truth" when each was represented by counsel who could conduct all communications truly necessary in furtherance of the matters in which they shared a joint legal interest.

---

[2] The circumstances that constituted the asserted common legal interest of Ms. Ducker and Mr. Worthy have not been explicated with the specificity the court would prefer. But Mr. Amin has focused his opposition on the scope of the privilege, not on whether it arose in the first place, so the court will do the same.

10

The Seventh Circuit has explored the scope of the common interest privilege primarily in two cases: *United States v. McPartlin,* 595 F.2d 1321 (7th Cir. 1979), and *United States v. BDO Seidman, LLP,* 492 F.3d 806 (7th Cir. 2007).  In both cases, the court emphasized the participation of an attorney in the confidential communication.

*McPartlin* involved co-defendants in a criminal proceeding who were represented by different counsel but who, as part of their defense to the charged crimes, had a joint interest in proving that a particular witness's testimony was false.  The court decided that with respect to this common interest, each criminal defendant was effectively represented by both his own attorney and his co-defendant's attorney.  Thus, communications that one co-defendant had with the other defendant's counsel fell within the common interest variant of the attorney-client privilege and were protected from disclosure.  The court stated: "McPartlin was entitled to the protection of the attorney-client privilege, because his statements were made in confidence to an attorney for a co-defendant for a common purpose related to both defenses."  595 F.2d at 1336.

*McPartlin* thus supports protecting from disclosure communications that Ms. Ducker may have had with Mr. Worthy's counsel, or that Mr. Worthy may have had with Ms. Ducker's counsel, so long as the communications were had for the purpose of the clients' joint interest in challenging Mr. Amin's version of events surrounding the delivery and discussion of the PACE report.

11

*BDO Seidman* addressed whether the disclosure to a third-party lawyer of a memorandum written in confidence by a client to his own lawyer for the purpose of seeking legal advice waived the privileged nature of the memorandum. The court found that because the lawyers served clients with common interests and the memorandum concerned that common interest, the memorandum was covered by the common interest privilege. The court explained that the memorandum was used to undertake a "consultation between [the clients'] respective in-house counsel and [one of the client's] outside counsel with respect to the legality" of a proposed course of action to be undertaken by the clients in servicing their common customers. 492 F.3d at 817. Because one clear purpose of the communication that was shared among clients and counsel was the securing of legal advice, it fell "clearly within the scope of the common interest doctrine." *Id.*

*BDO Seidman* thus supports protecting from disclosure communications that may have occurred between Ms. Ducker's and Mr. Worthy's respective counsel (whether or not the communications also included participation by Ms. Ducker and Mr. Worthy), so long as they concerned the clients' joint interest in establishing that Mr. Amin's version of events was false and their versions were true.

In neither *McPartlin* nor *BDO Seidman* were clients permitted to shield communications shared between them without any participation by legal counsel in the transmittal or conduct of the communication.

Ms. Ducker points out that another judge in this district has ruled that the common interest privilege can protect from disclosure communications that do not

12

involve legal counsel.  The facts in *Reginald Martin Agency, Inc. v. Conseco Medical Ins. Co.,* 460 F. Supp. 2d 915 (S.D. Ind. 2006), are different from the circumstances here in a key respect.  There, the clients shared the same legal counsel who represented them jointly in a single litigated matter.  Magistrate Judge Baker decided that communications between the jointly-represented clients were protected *if* they "implicate[d] [their] counsel's legal advice or mental impressions."  Significantly, he also held that communications that merely concerned the lawsuit and took place without counsel's participation were not protected by the common interest privilege.  *Id.* at 920.[3]

Whatever the need for clients who share the same counsel to be able privately to discuss between themselves their counsel's legal advice and mental impressions, there is no similar need when persons are represented by different legal counsel to whom each ultimately looks for his or her own separate legal advice.  In the setting where persons do not share the same counsel, the participation in the communication of at least one of the person's legal counsel appropriately limits the common interest privilege to those situations that serve the goals of the attorney-client privilege with the least impingement of the "right to every person's evidence."  *See BDO Seidman, LLP,* 492 F.3d at 815 (because of the "inherent tension between

---

[3] Even if this court were to adopt the rationale of *Reginald Martin* for cases involving clients represented by separate legal counsel, it does not support Ms. Ducker's invocation of a common interest privilege for every communication she had with Mr. Worthy that touched on their common interest in discrediting Mr. Amin's version of events surrounding the PACE report.  For communications outside counsel's presence, Judge Baker limited the privilege to communications that revealed the lawyer's mental impressions or legal advice.

the beneficial goals of the attorney-client privilege and the court's right to every person's evidence," the common interest privilege applies only where necessary to achieve the purposes of the attorney-client privilege). When a lawyer is involved in the communication, the judicial system gains confidence that the communication concerned a subject actually within the common interest of the clients and occurred because a legal advisor believed the communication was reasonably necessary to further the provision of legal advice connected to the joint interest.

Ms. Ducker's desire to shield everything she and Mr. Worthy said to one another outside the presence of their counsel about the PACE report and its dissemination is inconsistent with the aims of the attorney-client privilege. The judicial system should not, therefore, acquiesce in an obstruction to the search for truth by permitting a common interest privilege to apply to communications between persons who do not share the same legal counsel and that take place without the participation of counsel.

## Conclusion

Ms. Ducker's motion for protective order (Dkt. 46) is GRANTED in PART and DENIED in PART. The common interest privilege protects from disclosure only communications between Ms. Ducker and Mr. Worthy that included one or both of their legal counsel, or included only their legal counsel, and which concerned their common interest. It does not protect from disclosure communications between Ms. Ducker and Mr. Worthy without the participation of counsel.

**So ORDERED.**

**Date:** 12/31/2013

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

**Distribution:**

**All ECF-registered counsel of record via email generated by the court's ECF system**